NO. 3066

House Bill No. 231, providing that if it conflicts
with State anti-trust laws it shall be null and void,
held in conflict with such anti-trust laws and there-
fore invalid.

OFFICE OF THE ATTORNEY GENERAL

June 28, 1939

Honorable W. Lee O'Daniel
Governor of Texas
Austin, Texas

Dear Sir:

Opinion No. O-1039
Re: Validity of House Bill No. 231

We have for acknowledgment your letter of June 22, 1939,
wherein you ask the opinion of this Department upon certain
questions relating to the validity of House Bill No. 231, the
"fair trade" Act, the questions asked being as follows:

"1. Does the Caption of the bill, under the
Constitution, sufficiently set out the purpose and
cover the subject matter of the bill? I call your
particular attention to that part of the Caption
which says that it is for the purpose of protecting
trade-mark owners, distributors and the general pub-
lic against injurious and uneconomic practices in
the distribution of articles of standard quality
under distinguished trademark, brand or name, etc.,
and would like for you to advise me if this is suf-
ficiently consistent with the section of the bill
dealing with the subject and if it does, in fact,
comply with the Constitution in giving notice of the
contents of the bill? Please also make your answer
applicable to each and every part of the Caption.

"2. Is there any provision of the Act in its
purpose and final result in conflict with Chapter 3,
Title 19 of the Penal Code of this State, or with
Title 126 of the Revised Civil Statutes of 1925?

"In connection with the above I understand that
there is always a question as to whether or not the
kind of contracts contemplated in this Act are in
violation of some anti-trust statute. If the contracts
described are not in violation of the statute, it
would become difficult to understand the purpose of
this Act.

"3. If the manufacturer or other person selling
to a dealer in Texas enter into a contract with him
with the provisions stated, and he agrees and obligates
himself to sell the goods at a price stipulated by
such manufacturer, or other person, does he, by reason

of this Act or such contract, have any protection against such manufacturer or other person furnishing goods to another merchant in the same vicinity for sale at a different price, or no price at all? In other words, if one local dealer makes a contract for the purchase of commodities for resale with the manufacturer and agrees to sell them at a fixed price, can he by the terms of this bill have an agreement in his contract that the manufacturer will not sell to one of his competitors at a different price, or no fixed price? If such provision should be in the contract would it be a lawful provision?

"4. I would like for you to advise me the meaning and effect of Paragraph 2 of Section 1, reading as follows:

'That wilfully and knowingly offering for sale or selling any commodity at less than the minimum price stipulated in any contract entered into pursuant to the provisions of this Act, whether the person so offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby. ...'

"Do you consider this language sufficiently definite and certain to be binding?

"5. Please advise me in particular if Paragraph 3 of Section 2 is in violation of any Federal law or, if effective, would it amend, modify or repeal any of the Anti-Trust laws of the State of Texas?

"6. Is any portion of said Act in conflict with the Constitution and laws of the United States or of the State of Texas?"

Since we have reached the conclusion that House Bill No. 231 is in contravention of and conflicts with the anti-trust laws of the State of Texas, and therefore, by virtue of the provisions of Section 7 of House Bill No. 231, is a nullity and of no force or effect whatsoever, it becomes unnecessary at this time to engage in the extensive study necessary in order to enable us intelligently to answer other questions of constitutionality and statutory construction presented in your inquiry.

We have presented in this House Bill enacted by the Legislature of the State of Texas the novel and peculiar situation of a legislative body providing that the Act, designed to relieve certain types of contracts from the prohibitions contained in the anti-trust laws of the State of Texas, shall be deemed null and void and of no force and effect whatsoever if it is effective to accomplish the desired purpose. Novel and peculiar though this situation may be, it is nevertheless the duty of this Department and of all officers of the government charged with the duty of enforcing such laws to give full effect to the expressed intention of the Legislature.

Section 7 of House Bill No. 231 reads as follows:

"Nothing in this Act shall ever be construed as amending, modifying, suspending or repealing any of the laws of this State defining and prohibiting trusts, monopolies, and conspiracies against trade, with particular reference to Chapter 3, Title 19, Penal Code of the State of Texas, and Title 126, Revised Civil Statutes of Texas, 1925, and if any provision of this Act is held to be in contravention of or conflict with any of said laws, then said provision shall be null and void and of no force or effect."

Sections 1, 2, 3, and 4 of House Bill No. 231 read as follows:

"Section 1. That no contract relating to the sale or resale of a commodity which bears, or the label or content of which bears, the trade-mark, brand, or name of the producer or owner of such commodity, and which is in fair and open competition with commodities of the same general class produced by others, if not in violation of Chapter 3, Title 19, Penal Code of the State of Texas or Title 126, Revised Civil Statutes of Texas, 1925, and if made for a period not in excess of two (2) years from the date of its execution, shall be deemed in violation of any law of the State of Texas by reason of any of the following provisions which may be contained in such contract:

"1. That the buyer will not resell such commodity, below the minimum price stipulated by the vendor.

"2. That wilfully and knowingly offering for sale or selling any commodity at less than the minimum price stipulated in any contract entered into pursuant to the provisions of this Act, whether the person so offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby.

"3. That the vendee or producer require any dealer to whom he may resell such commodity to agree that he will not, in turn, resell, below the minimum price stipulated by such vendor or by such vendee.

"Sec. 2. Such provisions in any contract shall be deemed to contain a proviso conditioning that such commodity may be resold without reference to such agreement in the following cases:

"1. In closing out the owner's stock for the purpose of discontinuing delivery of any such commodity; provided, however, that such stock is first offered to the manufacturer of such stock at the original invoice price, at least ten (10) days before such stock shall be offered for sale to the public.

"2. When the goods are damaged or deteriorated in quality, and notice is given to the public thereof.

"3. By any officer acting under the orders of any court.

"Sec. 3. The following terms, as used in this Act, are hereby defined as follows:

"'Producer' means grower, baker, maker, manufacturer, or publisher.

"'Commodity' means any subject of commerce.

"Sec. 4. This Act shall not apply to any contract or agreement between the producers or between wholesalers or between retailers, as to sale or resale prices. It is further specifically provided that such contracts between said parties are hereby declared void."

Title 126, Revised Civil Statutes of the State of Texas, is the Title of our Civil Statutes relating to trusts and conspiracies against trade. The provisions of such title, applicable to the character of agreements with which House Bill No. 231 is concerned, are quoted below:

"Article 7426. A 'trust' is a combination of capital, skill, or acts by two or more persons, firms, corporations, or associations of persons, or either two or more of them, for either, any, or all of the following purposes:

"1. To create, or which may tend to create, or carry out restrictions in trade or commerce ... or to create or carry out restrictions in the free pursuit of any business authorized or permitted by laws of this State.

"2. To fix, maintain, increase, or reduce the price of merchandise, produce, or commodities ...

"3. To prevent or lessen competition in the manufacture, making, transportation, sale or purchase of merchandise, produce, or commodities ...

"4. To fix or maintain any standard or figure whereby the price of any article or commodity of merchandise, produce, or commerce ... shall be in any manner affected, controlled, or established.

"5. To make, enter into, maintain, execute or carry out any contract, obligation or agreement by which the parties thereto bind, or have bound themselves not to sell, dispose of, transport or to prepare for market or transportation any article or commodity ... or by which they shall agree in any manner to keep the price of such article or commodity ... at a fixed or graded figure, or by which they shall in any manner affect or maintain the price of any commodity or article ... to preclude a free and unrestricted competition among themselves or others in the sale ... of any such article or commodity, or by which they shall agree to pool, combine, or unite any interests they may have in connection with the sale or purchase of any article or commodity ... whereby its price or such charge might be in any manner affected.

"6. To regulate, fix or limit the output of any article or commodity which may be manufactured, mined, produced or sold, ...

"7. To abstain from engaging in or continuing business, or from the purchase or sale of merchandise, produce or commodities partially or entirely within the State of Texas, or any portion thereof."

Article 7429 provides as follows:

"Any and all trusts, monopolies and conspiracies in restraint of trade, as herein defined, are prohibited and declared to be illegal."

Article 7430 provides in effect that the charter of any corporation chartered under the laws of Texas which may be guilty of violating any provision of the Title 126, may be forfeited at the request of the Attorney General, if in the judgment of the Court trying the case, the public interest requires such forfeiture.

Article 7437 provides:

"Any contract or agreement in violation of any provision of this subdivision shall be absolutely void and not enforcible either in law or equity."

The balance of Title 126 contains many other provisions designed to make effective the prohibitions contained in subdivision 1 of the Title.

Articles 1632, 1633, 1634, contained in Chapter 3, Title 19, of our Penal Code, are but verbatim copies of Articles 7426, 7427, and 7428 of our Revised Civil Statutes, referred to above.

Article 1635 of our Penal Code provides that whoever violates any provision of such Chapter shall be confined in the penitentiary not less than two nor more than ten years. The balance of the Title contains provisions not necessary to be noticed in connection with the discussion involved herein.

Even a casual reading of the provisions of the above statutes discloses that they were designed to prevent the fixing of prices of articles of commerce in any manner by the combined efforts of two or more individuals, firms, corporations, or associations of persons. The anti-trust laws constitute a legislative recognition that combinations, having for their purpose or effecting by their acts the fixing of prices, are obnoxious to the public interest, and display a desire to enact comprehensive laws to render such price-fixing illegal, unenforcible, and punishable criminally, no matter how it may be sought to be accomplished, whether directly or indirectly.

So far as our anti-trust laws condemn so-called "vertical" price-fixing, they constitute but a legislative adoption and recognition of the statement made by the Supreme Court of the United States in the case of Straus vs. Victor Talking Machine Co., 243 U. S. 490, 61 L. Ed. 866, that attempts

to sell property for a full price and yet to place restraints upon its further alienation, have been obnoxious and hateful to the law from the days of Lord Coke, because obnoxious to the public interest.

In order to understand thoroughly the nature of the problem presented in connection with such laws as the one under consideration, it is perhaps advisable that we review the arguments in favor of and against such laws. It is contended by advocates of such legislation that the manufacturer of trade-marked or branded articles of commerce has a vital interest in the good will engendered by the sale of such goods with his brand or trade-mark upon them; that price-cutting in such goods by retailers to whom the manufacturer or distributor has sold them results in damage to the manufacturer's good will; that the damage thus sustained increases the manufacturer's costs and impairs his ability to market his goods and results in increased prices for such goods to the buying public. (7 A.L.R. 453-456). It is argued that "vertical" price-fixing--that is, price-fixing on a branded commodity in competition with other branded commodities of a similar class, by agreement between the manufacturer or the distributor and the dealers in such commodity, as to the prices for which his commodity alone may be sold, is beneficial to the public generally; whereas, it is admitted that "horizontal" price-fixing agreements-- that is, price-fixing between manufacturers or dealers in similar commodities normally in competition each with the other, is decidedly inimical to the public interest.

On the contrary, the arguments against such price-fixing are phrased as follows by the Federal Trade Commission report for the fiscal year ending June 30, 1918:

"I. The power to fix prices will usually be abused by the allowance of too large profits;

"2. Resale price maintenance protects and encourages inefficient jobbers and prevents elimination in the over-crowded field of middlemen;

"3. It tends to secure cooperation of dealers and to prejudice them against brands whose prices are not fixed;

"4. It forces other dealers to attempt the control of prices;

"5. It encourages general standardization of prices and elimination of normal competition among dealers; and,

"6. It forces the ultimate consumer to pay higher prices and leaves him no bargaining power with respect to the article concerned." (7 A.L.R. 453)

It is, of course, the prerogative of the Legislature, in the exercise of its constitutional authority to originate such legislation as this, and of the Governor, in the exercise of his constitutional authority to veto or approve, to balance these arguments and considerations the one against the other, determine their validity, and to take such action as, to them, appears to be in the interest of the public generally.

In the absence of any constitutional inhibitions neither this Department nor the courts would have any rightful concern with the question of public policy involved, since the determination of that question of public policy is governed by findings of fact, and the power to make such findings of fact is by our Constitution exclusively vested in the Legislature and in the Chief Executive of the State.

It follows that if the Act had unequivocally exempted such agreements as are contemplated by its terms from the provisions of the anti-trust laws of the State of Texas, this Department would be concerned only with the question of its constitutionality. The Act, however, does not make such unequivocal exemption, but expressly provides that if the contracts sanctioned by it are violative of those State anti-trust laws already enacted and in full force and effect, the Act itself, not the anti-trust laws, shall be null and void and of no force and effect. So that it becomes necessary for this Department at the outset to consider the question of whether the Act by it's own terms is a nullity, and this question being determined in the affirmative, any question of constitutionality becomes moot.

By numerous decisions in the State of Texas, our courts have determined that our State anti-trust laws render absolutely null and void "vertical" price-fixing agreements entered into between manufacturers or distributors and retailers, whereby the retailer agrees to resell an article of commerce in this State only at a price fixed by the manufacturer or distributor of such article of commerce.

In the case of Caddell vs. Watkins (C.C.A. San Antonio) 227 S. W. 226, the Court said:

"If by the force of this contract and the control given thereunder, the resale of the product in this State is limited to any prescribed territory, or to a fixed price, or the retailer is required to devote all his time to the sale of these particular goods and may not engage in any other business, then we say that such contract ... is in contravention of our anti-trust statutes and therefore invalid."

In the case of Segall vs. McCall Co., 184 S. W. 189, the Supreme Court of the State of Texas held a contract for a sale of patterns, obligating Segall to sell no other patterns except McCall's, and to resell at prices fixed by McCall, to be void, in violation of Texas anti-trust laws, saying:

"The contract fixes the price at which the vendee shall sell in Texas and provides that he shall refrain from selling at retail in Texas any other pattern than the McCall pattern. This brings it under the jurisdiction of the Texas laws."

To the same effect, upon similar facts, see Pictorial Review Co. vs. Pate Bros. (C.C.A. Ft. Worth), 185 S. W. 309.

The excerpt from the opinion in Caddell vs. Watkins Medicine Co. cited above, is quoted with approval in the

case of F. W. Cooke vs. Page (C.C.A. San Antonio), 294 S. W. 934, as well as in many other Texas cases.

In the case of Hubb-Diggs Co. vs. Mitchell (C. C. A. Austin), 231 S. W. 425, it was held that a contract between a wholesale and a retail dealer providing that the retailer should resell tractors at a price fixed by the manufacturer, Henry Ford, for sale to the retail trade, and requiring the wholesaler to reimburse the retailer for any decrease in the retail price of the tractors, was an agreement to fix and maintain the price for the sale of such commodity, and therefore violative of our State anti-trust laws, hence void.

In the case of Coca Cola Co. vs. The State, 225 S. W. 791, the court announced the rule that our State anti-trust laws were applicable to sales of patented, copyrighted, or trade-marked articles, stating:

"The owner of an article protected by a patent, copyright, or trade-mark, when he has manufactured and sold the same, cannot impose restrictions on his vendee as to the future sale of same. Having parted with his ownership therein, it enters the channels of trade as an article of commerce, and is thereafter beyond his control."

This rule of law was cited with approval in the case of Rogers v. Westinghouse Electric Supply Co., 116 S. W. (2d) 886, writ of error refused by our Supreme Court, by the Austin Court of Civil Appeals in the case of National Automatic Machine Co. vs. Smith, 32 S. W. (2d) 679, and by the Texarkana Court of Civil Appeals in the case of Tri-State Sales Co. vs. National Automatic Machine Co., 38 S. W. (2d) 859.

In each of the following cases, the contracts with which the courts were dealing prominently involved agreements between manufacturers or distributors and dealers to whom they were selling their goods that such dealers should resell such goods only at retail prices fixed by the manufacturer or distributor. In each case, such "vertical" price-fixing agreement was held to be void because in violation of our State anti-trust laws:

W. T. Rawleigh Co. vs. Baker, et al (C.C.A. Texarkana), 117 S. W. (2d) 1117.

Marathon Oil Co. vs. Hadley, et al (C.C.A. Ft. Worth), 107 S. W. (2d) 883, writ dismissed.

McConnon vs. Ralston, et al, 275 S. W. 165.

McConnon vs. Marshall, et al (C.C.A. Texarkana), 280 S. W. 323.

W. T. Rawleigh Co. vs. Bradberry (C.C.A. Amarillo), 290 S. W. 870.

W. T. Rawleigh Co. vs. Hudson, et al (C.C.A. El Paso), 290 S. W. 775.

W. T. Rawleigh Co. vs. Gober, et al (C.C.A. Waco), 5 S. W. (2d) 845.

J. R. Watkins Medical Co. vs. Johnson, et al (C.C.A. San Antonio), 162 S. W. 394.

In each of the above cited cases just referred to, there were other violations of the anti-trust laws involved in such contracts, such as requirements that the goods be sold by the retailer only in a certain territory, or that the dealer should bind himself to sell no other goods of a similar character, or that the dealer devote his entire time only to the sale of the particular company's merchandise; but it is apparent from the following cases referred to below that the stipulation in the contracts which chiefly concerned the courts was that fixing prices, and that the other stipulations referred to were regarded by the courts, as they are by the anti-trust laws, as vicious and contrary to the public interest because they afford effective means by which price control may be maintained.

In the case of J. R. Watkins Medical Co. vs. Johnson et al (C.C.A. San Antonio), 162 S. W. 394, the Court, in distinguishing the Supreme Court cases of Albertype Co. vs. Feist Co., and Fuqua vs. Brewing Co., remarks:

"... they are clearly distinguishable. In the Fuqua case the parties sought to control the price and sale of the beer after the title thereto vested in the purchaser, as well as to deprive the buyer and seller of the right to deal with any other persons with reference to the same commodity in the same territory during the term of the contract. In the Feist case no effort was made to control or limit the disposition of the goods ... but to bind the seller to sell the same class of goods to no other person in the same territory for a limited time. The contract clearly shows that Feist & Company were in no manner limited in their right to sell or to fix the price of the goods or in any manner to control or limit the free and unrestrained traffic in the goods sold after the title thereto vested in Feist & Company. The same can be said of the case of Eclipse Paint Company vs. New Process Roofing Company."

In the case of Double Seal Ring Company vs. Keith, (C.C.A. Ft. Worth), 107 S. W. (2d) 428, writ refused, the Court recognized that if the contract there under consideration had been one of sale, rather than one of agency, and had fixed the resale prices at which the commodities must be sold, it would have been in violation of our State anti-trust laws.

In the case of Nu Enamel Paint Co. vs. Davis (C.C.A. Ft. Worth), 63 S. W. (2d) 861, the Court, in holding that a contract for the sale of paint not stipulating that the distributor should be the sole distributor in the territory designated nor binding him to sell at a fixed price, did not violate State anti-trust laws, remarks:

"New Century Manufacturing Co. vs. Scheurer (Texas Commission of Appeals) 45 S. W. (2d) 560, is not in point, since the contract there construed did stipulate a fixed price for which the articles contracted for should be sold."

It must be noted, of course, that the case of New Century Manufacturing Co. vs. Schourer held a contract to purchase paint containing provisions fixing the resale price of paint to be in violation of the Federal anti-trust laws; but it is apparent that the Fort Worth Court of Civil Appeals construed that case as equally applicable to our State anti-trust laws.

In the case of W. T. Rawleigh Co. vs. Fletcher, et al, (C.C.A. Texarkana), 275 S. W. 810, the Court stated that the fact that a buyer, purchasing articles outright, was largely governed by the seller's "suggested prices" in disposing of articles bought did not in and of itself constitute a violation of State anti-trust laws. The Court says:

"There is no finding that it was a part of the contract for Fletcher to resell the goods at prices listed to him. The mere fact that 'in disposing of the products purchased by him,' Fletcher 'was largely governed' by 'a suggested retail price list of products' would not, in itself, be a violation of the statutes."

That case, therefore, turns upon the failure to establish either the agreement or the custom implying an agreement, to resell at prices fixed by the company, the court necessarily implying that if Fletcher had obligated himself to resell at prices fixed by the company, there would have existed such a combination as is made unlawful by the anti-trust laws of Texas, and such contracts would have been void.

And in the case of W. T. Rawleigh Co. vs. Fish, (C.C.A. Eastland), 290 S. W. 798, the Court, in construing a contract for the sale of goods as not limiting either territory, resale price, or requiring vendee to sell only vendor's goods, and therefore not violating our State anti-trust laws, again implies that if the contract had fixed the resale price, it would have been in violation of our anti-trust laws.

And in the case of W. T. Rawleigh Co. vs. Harper (Commission of Appeals), 17 S. W. (2d) 455, the Commission of Appeals, where the jury found that the agreement made provided that Harper was to devote his entire time, skill, etc., to selling goods purchased of the company by him, but that it did not contemplate or provide that his territory was to be limited or that the resale price was to be fixed by the company held that the contract did not violate our State anti-trust laws, but here again the intimation is clear that if the contract had provided for the fixing of the resale price, the court would have held it to be void.

Other authorities from this State might be cited by us in support of the proposition involved, but to do so would unduly lengthen this opinion. Exhaustive annotations upon the subject will be found in 7 A.L.R. 449; 19 A.L.R. 925; 32 A.L.R. 1087; 103 A.L.R. 1331; 104 A.L.R. 1452; 106 A.L.R. 1486; and 110 A.L.R. 1413.

That the immediate effect of the combination or agreement may be to lower prices has been held by our courts not to vitalize or render valid such agreements. In San Antonio Gas Co. vs. State, 54 S. W. 289, it is said:

"It does not matter that the immediate result of combination may be a reduction in the price of commodities. A dangerous arbitrary power has been lodged in its hands, by which the business of the country may be absolutely dominated, and price arbitrarily controlled, regardless of the laws of trade or the rules of supply and demand. ... The object of the statutes is to guard the commerce and trade of the state so that it may flow in its regular channels, subject to the law of supply and demand, and untrammeled by the combinations of man or corporations which can, at will, control their course."

We have been referred to the case of Old Dearborn Distributing Co. vs. Seagram Distillers, 81 L. Ed. 709, by the Supreme Court of the United States. That case involved only the validity of the Illinois Fair Trade Act insofar as the Constitution of the United States is concerned. The Illinois Fair Trade Act contained no such provision as is found in Section 7 of House Bill 231, hence that authority has no bearing upon the question on which the validity of House Bill 231 has turned.

Subsections 1, 2 and 3 of Section 1 of House Bill 231, quoted above, expressly sanction and propose to make valid and binding contracts of a character denounced and rendered null, void, and unenforcible by the provisions of our State anti-trust laws, as contained in Chapter 3, Title 19, Penal Code of the State of Texas, and Title 126, Revised Civil Statutes of Texas, 1925. Therefore, by virtue of the express provisions contained in House Bill No. 231, Section 1 of House Bill No. 231 is entirely null, void, and of no force and effect. Since the provisions contained in Section 1 of House Bill No. 231 constitute the bone and sinew of the entire Act, and without such provisions the remainder of the Act becomes meaningless, it is apparent that the entire Act must fall.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *R W Fairchild*

R. W. Fairchild
Assistant

RWF:PBP

This opinion has been considered in conference, approved, and ordered recorded.

*Gerald C. Mann*

GERALD C. MANN
ATTORNEY GENERAL OF TEXAS